**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

MELINDA BEASLEY PEARSON,    *
              *
   Plaintiff,     *
              *
  v.          *
              *   CV 114-110
              *
AUGUSTA, GEORGIA through its  *
Mayor Hardie Davis, Jr., in his *
official capacity, and its   *
commission, in its official   *
capacity et al.,      *
              *
   Defendants.    *

## O R D E R

This case arises out of Plaintiff's employment with Defendant Augusta, Georgia. After over thirty years of service, Augusta demoted Plaintiff for violating workplace policies. It then, according to Plaintiff, forced her into retirement. In response, Plaintiff sued Augusta and three Augusta employees under a number of federal employment statutes and the Fourteenth Amendment. But because the Court does not sit as a "super-personnel department assessing the prudence of routine employment decisions," Flowers v. Troup Cty., Ga, Sch. Dist., 803 F.3d 1327, 1338 (11th Cir 2015) (citation omitted) (internal quotation marks omitted), most of Plaintiff's claims fail. Only her Title VII retaliation claim will proceed.

# I.  **Factual Background**

Plaintiff began working for Augusta in 1980. Eventually, she became an operations manager in the Recreation, Parks, and Facilities ("Parks and Recreation") department. As part of her duties, Plaintiff managed over twenty employees and was responsible for the day-to-day operations of over sixty city facilities. And as an operations supervisor, Plaintiff was classified as an exempt employee under the Fair Labor Standards Act ("FLSA"). Thus, she did not receive overtime compensation for working more than forty hours in a workweek. But according to Plaintiff, she also performed a significant amount of manual labor, which she believed entitled her to overtime pay under the FLSA.

At some point, certain Parks and Recreation officials began allowing exempt employees to accrue "comp time" when they worked more than forty hours in a workweek. When employees worked certain special events that ran late into the night, for example, Parks and Recreation would allow them to record that time. The employees would later be permitted to use the comp time as paid time off from work. Plaintiff participated in this program.

In 1999, Plaintiff asked her supervisor for permission to use some of her comp time. But Plaintiff's request was denied because, as an exempt employee, she was not permitted to accrue

comp time. (Doc. 31, Pl. Dep. at 83-86.) Plaintiff contested this decision to the director of human resources, who allowed Plaintiff to use the time she had accrued. (Doc. 31-4.) Specifically, in a letter to the director of Parks and Recreation, the human-resources director noted that Plaintiff was in fact prohibited from accruing comp time because she was an exempt employee. (Id.) But he determined that because Plaintiff had been allowed to accrue the time, "there [was] no other option other than to compensate her for this time." (Id.) Thus, Augusta permitted Plaintiff to use the time she had accrued.

Following this incident, the director of Parks and Recreation, Tom Beck, instructed Plaintiff to stop recording comp time on her payroll records. (Pl. Dep. at 87.) Mr. Beck told her that she was instead required to record only 7.5 hours, regardless of how many hours she worked in a day. (Id. at 89.) Plaintiff disagreed with Mr. Beck's instruction, so she implemented her own method for tracking comp time. (Id. at 89-90.)

Employee timecards at the time contained three sheets — a white sheet, a blue sheet, and a yellow sheet. On the white copy, Plaintiff would record the 7.5 hours she was required to record. (Id. at 89.) This copy went to the payroll department. On the blue and yellow copies, Plaintiff would record the actual

3

time she worked.  (Id. at 90.)  And when Plaintiff wanted to use her comp time, she would fill out a request form and request her supervisor's approval.[1]  (Id. at 93.)  Plaintiff followed this practice from 1999 until 2012, when she was demoted.

In 2000, Augusta adopted an ordinance that created an employee policy manual.  (Doc. 31-5.)  In 2011, Augusta amended its policy manual.  (See Doc. 31-7.)  The 2011 version specifically provides that "comp time shall only be applicable to non-exempt employees."  (Doc. 31-8 at 20.)

In July 2011, Plaintiff took a leave of absence from work for medical reasons.  (Pl. Dep. at 118-19.)  She received leave with pay from early July until August 19, 2011.  (Id. at 119.)  But in August, Plaintiff ran out of leave time.  (Id. at 120.)  Plaintiff then attempted to use the comp time she had purportedly accrued to continue her leave with pay.  (Id. at 123.)  Her request was denied, however, because the human-resources department did not have a record of her comp time.  (Id. at 128.)

Because Plaintiff had run out of sick leave, some of her coworkers donated leave to her through Augusta's catastrophic-leave program.  (Id. at 148-49.)  Under this program, employees could request leave donations from other employees.  But out-of-

---

[1]  According to Plaintiff, other exempt employees followed a similar practice.  (Pl. Dep. at 94.)  But she was not certain of the other employees' exact practices because she was the only exempt employee in her division.  (Id. at 94-95.)

4

work employees were permitted to make these requests only if they had exhausted all of their own leave. Plaintiff received catastrophic-leave pay from September 9 through December 2. (Id. at 153.) She returned to work on December 5, 2011. (Id. at 154-55.)

When Plaintiff returned to work, she immediately began having trouble working with another employee, Sam Smith, with whom she had previously had issues. (See id. at 160-61.) Plaintiff spoke with Dennis Stroud, her supervisor at the time, about Mr. Smith the first day she returned, but this proved unproductive. Two weeks later, she approached Mr. Stroud again. (Id. at 170-71.) This time, Plaintiff and Mr. Stroud got into a heated argument, and Plaintiff left work. (Id. at 171-72.) When she got home, Plaintiff called Mr. Stroud and asked to use her accrued comp time so she could have a few days to clear her head. (Id. at 172.) Mr. Stroud agreed, and Plaintiff took four days off. (Id. at 178.) Notably, while she was out, Plaintiff's timecard showed that she worked those days. (Id. at 180.)

In the spring of 2011, the human-resources department began an investigation into Plaintiff's use of comp time. According to Bill Shanahan, the interim director of human resources and of the Parks and Recreation department, Lisa Hall, an employee from Parks and Recreation, complained to human resources about

5

Plaintiff's use of comp time. (Doc. 41-1, Shanahan Dep. at 18.) Specifically, Mr. Shanahan contends that Ms. Hall questioned why Plaintiff was able to use comp time after returning to work when Plaintiff had previously requested catastrophic leave, which is only available when an employee has exhausted all other leave options. (Id. at 18.) Ms. Hall denies that she made this complaint and instead claims that others complained to her about Plaintiff's use of comp time. (Doc. 91-1, Hall Dep. at 26-27.)

In any event, Plaintiff learned about the investigation in February 2011 when Mr. Shanahan and other human-resources employees arrived at her office to review Plaintiff's records. (Pl. Dep. at 180.) Soon thereafter, Plaintiff spoke with Mr. Shanahan and explained her timekeeping process to him. (Id. at 187.)

As a result of Mr. Shanahan's investigation, Plaintiff was demoted to the position of maintenance worker. (Id. at 190.) She began work in that position in early May 2011. (Id. at 204-205.) Around the same time, Plaintiff also appealed her demotion. (Id. at 190.) As part of the appeal process, Plaintiff was granted a hearing in front of Fred Russell, Augusta's administrator. (Id. at 194.) At the hearing, however, Mr. Russell did not allow Plaintiff to present witnesses. (Doc. 37-1, Russell Dep. at 33-34.) Mr. Russell claims that the appeal was an "administrative review" and that

6

Plaintiff should have been afforded an opportunity to present witnesses at a prior hearing. (Id. at 34.) But Mr. Russell was apparently unaware that Plaintiff had not been given a prior hearing.

Plaintiff worked as a maintenance worker until May 31, 2011. (Pl. Dep. at 213.) At that time, she went out of work with an injury. (Id. at 219.) Plaintiff remained out of work for over a year, and in late 2012, she underwent back surgery. (Id. at 223-25.) Not long after her surgery, someone from Augusta contacted Plaintiff and requested that she return to work by January 2013. (Id. at 225-26.) She did not return in January, and in February 2013, Plaintiff met with someone in Augusta's human-resources office. (Id. at 226.) During that meeting, Plaintiff claims that she was presented with three options: (1) she could "retire and freeze [her] pension"; (2) she could retire and face a penalty for drawing from her pension early; or (3) she could choose not to act, in which case Augusta would choose for her. (Id. at 227.) Whether on purpose or not, Plaintiff apparently chose option three because she soon learned that Augusta had retired her without her permission.[2] (Id. at 228.)

_____

[2] According to Plaintiff, her retirement was effective February 1, 2013. (Pl. Dep. at 228.) If this is true, it is unclear from the record whether Augusta had already made its decision when Plaintiff met with the human-resources official in February or whether Augusta chose to make her retirement effective retroactively.

7

## II.  **Procedural Background**

Plaintiff began this litigation in May 2014 when she filed suit against Augusta, Fred Russell, Bill Shanahan, and Sam Smith.    In her complaint, she alleges that: (1) she was retaliated against in violation of the Family and Medical Leave Act ("FMLA")[3]; (2) she was retaliated against in violation of the FLSA; (3) she was denied due process; and (4) she was denied equal protection.

Plaintiff's complaint, however, did not include all of the claims she intended to bring.    In November 2012, Plaintiff filed a charge of discrimination with the EEOC alleging that her demotion was the result of race and gender discrimination and retaliation.    (Doc. 28-7.)    In April 2013, Plaintiff filed a second EEOC charge alleging that she was fired based on her disability and in retaliation for filing her first EEOC charge. (Doc.  28-10.)    Plaintiff did not receive her right-to-sue letters until January 2015.    (Doc. 28-14.)    So Plaintiff filed a second lawsuit against Augusta in August 2015.    (CV 115-123.) In her second complaint, Plaintiff alleges: (1) that Augusta discriminated against her based on her race and gender in violation of Title VII; (2) that Augusta discriminated against her based on a disability; (3) that Augusta retaliated against

---

[3]  Plaintiff explicitly withdrew her FMLA claims.  (See Doc. 126 at 21.) The Court thus **GRANTS** Augusta's motion for summary judgment on those claims.

her for filing her November 2012 EEOC charge; and (4) a claim of hostile work environment. (CV 115-123, Doc. 6.)

At Plaintiff's request, the Court consolidated her two cases. The Court also allowed the parties time to complete discovery and file dispositive motions on the claims raised in the second case before ruling on the dispositive motions that were already pending in the original case. All of the parties' motions are now ripe for review.

### III.  Legal Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with

evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave the parties notice of the motions for summary judgment and informed them of the summary-judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 59, 60, 139, 142.) Thus, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.

## IV.  **Discussion**

As noted, Plaintiff asserts a number of claims. Defendants move for summary judgment on all of Plaintiff's claims, and

11

Plaintiff moves for summary judgment on two of the claims. The Court addresses the parties' arguments below.

## A. Race and Gender Discrimination

Plaintiff contends that Defendants[4] discriminated against her based on her race and gender. She asserts equal protection claims under 42 U.S.C. § 1983 (and the Fourteenth Amendment) and employment-discrimination claims under Title VII. Because Plaintiff's gender- and race-discrimination claims are based on the same facts, the Court addresses them together. And the Court analyzes Plaintiff's equal protection and Title VII claims together because "the analysis of disparate treatment claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Also, Plaintiff asserts her claims both under a single-motive theory and a mixed-motive theory, and the Court addresses these theories separately below.

### 1. Plaintiff's single-motive theory

In a disparate-treatment case based on circumstantial evidence, such as this one, courts apply the familiar burden-shifting framework derived from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, a plaintiff

---

[4] Plaintiff brings her equal protection claims against Augusta and against Mr. Shanahan and Mr. Russell in their individual capacities. She brings her Title VII claims against Augusta.

must first establish a prima facie case of discrimination, which requires that she show: (1) that she belongs to a protected group; (2) that she suffered an adverse employment action; (3) that her employer treated similarly situated employees outside of her class more favorably; and (4) that she was qualified for the job. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Comparators under the fourth prong must be "similarly situated in all relevant respects." Id.

If a plaintiff successfully establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. See Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010). But "[t]he employer need not persuade the court that it was actually motivated by the proffered reasons." Id. (citation omitted) (internal quotation marks omitted). Rather, once the employer articulates a nondiscriminatory reason for its actions, then the burden shifts back to the employee to show that the reason was merely pretext for discrimination. See id.

This burden-shifting analysis, however, is not "the sine qua non for a plaintiff to survive a summary judgment motion in Title VII cases." Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1336 (11th Cir. 2015) (citation omitted) (internal quotation marks omitted). It does not "relieve Title VII

13

plaintiffs of their burden to put forth evidence of discrimination," id., and "[t]he critical decision that must be made is whether the plaintiff has "create[d] a triable issue concerning the employer's discriminatory intent," id. (citation omitted) (internal quotation marks omitted).

### a. Plaintiff has failed to establish a prima facie case of discrimination.

Only the fourth prong of the prima facie case is contested in this case: Defendants contend that Plaintiff has failed to identify any similarly situated employees outside of her protected class who were treated more favorably. In response, Plaintiff names a number of other employees who she claims were treated more favorably. Plaintiff specifically names (1) Donnell Conley, (2) Chris Scheuer, (3) Ron Houck, and (4) Sam Smith. These individuals, however, are not similarly situated.

Plaintiff argues that Mr. Conley, Mr. Scheuer, and Mr. Houck are all exempt employees who used comp time but were not disciplined. In an affidavit, Mr. Conley stated that, even though he was an exempt employee, he accrued comp time while Mr. Shanahan was the interim director of Parks and Recreation and that his coworkers in Augusta's Athletic Department routinely did the same. (See Doc. 68-1.) Mr. Scheuer similarly testified that exempt employees in the Athletic Department were routinely permitted to accrue comp time, including while Mr. Shanahan was

the interim director. (See Doc. 114-1.) And Mr. Houck testified simply that he was aware that some exempt employees in the Parks and Recreation department were permitted to accrue comp time. (See Doc. 115-1.)

At bottom, this evidence shows that some employees in the Parks and Recreation department had been permitted to accrue comp time. And some of these employees may have accrued and used comp time while Mr. Shanahan was the interim director of the department. But it does not show — nor does Plaintiff argue that is shows — that Mr. Shanahan approved of this behavior or that he was aware of any specific individuals who accrued or used comp time while he was the interim director. And more notably, Plaintiff has not shown that any of these individuals' timecards indicated that they were working when they were not.

Plaintiff has likewise failed to show that Mr. Smith is an apt comparator. Plaintiff contends that, because Mr. Smith was not disciplined for his violations of Augusta's policies, he is a similarly situated employee who was treated more favorably. But Plaintiff has not pointed to any evidence that Mr. Smith engaged in similar conduct as Plaintiff. See Burke-Fowler v. Orange Cty., 447 F.3d 1319, 1323 (11th Cir. 2006) (per curiam) ("When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or

15

similar conduct and are disciplined in different ways."
(citation omitted) (internal quotation marks omitted)).

Rather, Plaintiff argues that Mr. Smith improperly covered up another employee's bad behavior and that he spent several hours at his home during work hours without permission. Plaintiff does not, however, argue that Mr. Smith ever improperly accrued or used comp time (with or without Mr. Shanahan's knowledge) or that he ever misrepresented whether he was working on his timecard. Furthermore, it is not clear from the record that Mr. Smith was not disciplined. Plaintiff instead argues that Mr. Smith was not demoted — that is, he did not receive the same punishment as Plaintiff. Thus, Mr. Smith is not similarly situated to Plaintiff.

  b. <u>Plaintiff has failed to rebut Defendants' legitimate, nondiscriminatory reason for demoting her.</u>

Even if Plaintiff could establish a prima facie case of discrimination, her claim would still fail because she has failed to show that Defendants' reason for demoting her was pretext for discrimination. Defendants argue that they demoted Plaintiff because she accrued and used comp time and submitted a timecard that fraudulently stated that she worked days that she did not. Plaintiff argues that Defendants' proffered reasons are pretext for discrimination because: (1) Mr. Shanahan lied about what triggered the investigation into Plaintiff's

16

practices; (2) Mr. Shanahan and Mr. Russell knew that certain employees had previously received comp time; and (3) Mr. Shanahan and Mr. Russell did not adequately determine whether Plaintiff knew she could no longer use comp time.[5]

To support her first argument, Plaintiff points out that Lisa Hall disputes Mr. Shanahan's position that Ms. Hall raised the concern surrounding Plaintiff's use of comp time. Thus, Plaintiff contends, Mr. Shanahan fabricated that interaction so he could launch an investigation into Plaintiff's employment practices for the sole purpose of having Plaintiff demoted. But there is no evidence that this is what happened. Instead, there is at worst a discrepancy in the record about who posed the question that prompted the investigation, which is insufficient to create a triable issue on pretext. See Flowers, 803 F.3d at 1339 ("Allowing the plaintiff to survive summary judgment would be inappropriate, for example, if . . . the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." (citation omitted) (internal quotation marks omitted)).

---

[5] Plaintiff also repeatedly asserts that Mr. Smith replaced her after she was demoted. Evidence does indicate that Mr. Smith was promoted (to a different position than the one Plaintiff held) and that he assumed some of her responsibilities. But that evidence is insufficient to establish pretext.

As for her second and third arguments, Plaintiff contends that, because Mr. Shanahan and Mr. Russell knew that some exempt employees were permitted to accrue comp time, they should have known that Plaintiff was acting innocently. She also argues that Mr. Shanahan and Mr. Russell may have known that she did not willingly violate any policy. She contends, for example, that Mr. Shanahan and Mr. Russell were not certain that Plaintiff had read the 2011 policy manual, even though they based their decisions in part on her knowingly violating that manual.[6]

Plaintiff's arguments are essentially attempts to dispute the soundness of Mr. Shanahan's investigation and Mr. Russell's decision to uphold her demotion. That is, she claims that she did not actually commit the violations for which she was demoted. But the law "does not allow federal courts to second-guess nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges." Id. at 1338. Indeed, an employer is free to fire its employees for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Id. (citation omitted) (internal quotation marks omitted). Thus, that

---

[6] Plaintiff also argues that Mr. Shanahan and Mr. Russell should have informed the exempt employees that the purported policy allowing them to accrue comp time was no longer in effect

Defendants arguably should have approached the situation differently or reached a different conclusion based on their investigation is insufficient to create a triable issue on pretext. This is especially true when there is no evidence that they did not honestly believe that Plaintiff acted wrongfully. See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head.").

## 2. Plaintiff's mixed-motive theory

Plaintiff also argues that her discrimination claims survive under a mixed-motive theory. That is, Plaintiff contends that, even if Defendants acted in part based on lawful reasons, they were still motivated in part by unlawful discrimination. Because Plaintiff has not produced evidence of discriminatory intent, Plaintiff's claims fail under this theory.

"An employee can succeed on a mixed-motive claim by showing that illegal bias, such as bias based on sex or gender, was a motivating factor for an adverse employment action, even though other factors also motivated the action." Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016) (citations omitted) (internal quotation marks omitted). The McDonnell

19

_Douglas_ burden-shifting analysis does not apply in mixed-motive cases. Instead, courts evaluate whether a plaintiff has produced sufficient evidence from which a jury could conclude that "(1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was a motivating factor for the defendant's adverse employment action." _Id._ at 1239 (alterations in original) (internal quotation marks omitted) (quoting _White v. Baxter Healthcare Corp._, 533 F.3d 381, 400 (6th Cir. 2008)). Put differently, the Court "must determine whether the plaintiff has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that [her protected characteristic] was a motivating factor for [an] adverse employment decision." _Id._ (alterations in original) (citation omitted) (internal quotation marks omitted).

On this issue, Plaintiff relies heavily on the same evidence and arguments that she presented to rebut Defendants' nondiscriminatory reasons under her single-motive theory. But, again, those arguments are in effect attempts to challenge her demotion as unwarranted or unfair. Plaintiff also argues that Mr. Shanahan and Sam Smith had a close relationship and that Mr. Smith thought he was smarter than Plaintiff.

To the extent there is any evidence that Mr. Smith and Mr. Shanahan had a close relationship, there is no evidence that

20

they furthered their relationship by unlawfully discriminating against Plaintiff. And whether Mr. Smith thinks he is smarter than Plaintiff is irrelevant because, among other things, there is no evidence that he thinks that because of Plaintiff's race or gender. Thus, Plaintiff has not produced evidence showing that race or gender animus motivated Defendants' decision to demote her.

In sum, Plaintiff's discrimination claims are based on what she perceives to be unfair treatment.[7] She has failed to offer any evidence that would support the reasonable inference that Defendants demoted her based on her gender or race. Accordingly, the Court **GRANTS** Defendants' motions for summary judgment on these issues.

## B. Due Process

Plaintiff alleges that Defendants violated due process in a number of ways. Although Plaintiff's arguments are not entirely clear to the Court, it has discerned that Plaintiff alleges: (1) that Augusta took away her right to accrue comp time without due process; (2) that Defendants[8] failed to provide her with an adequate opportunity to dispute the allegations surrounding her

---

[7] To the extent Plaintiff asserts that she was treated arbitrarily, a "class-of-one theory of equal protection does not apply in the public employment context." Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008).

[8] Similar to her discrimination claims, Plaintiff brings her due process claims against Mr. Shanahan and Mr. Russell individually and against Augusta.

demotion; (3) that Defendants failed to provide Plaintiff with adequate process before they terminated[9] her employment; and (4) that Defendants decreased her salary by an amount greater than was permitted.

Defendants move for summary judgment on Plaintiff's due process claims and argue essentially that Plaintiff received all the process she was due.[10] Plaintiff also moves for summary judgment on these claims.

### 1. Plaintiff's claim that Defendants improperly deprived Plaintiff of her right to accrue comp time

In her complaint, Plaintiff alleges that she was denied due process because Mr. Russell was biased against her, because Defendants did not provide her notice of the allegations against her or an opportunity to dispute them, and because Defendants lowered her pay by too much. In her motion for summary judgment, however, Plaintiff contends that Augusta deprived her of her property interest in her ability to accrue comp time without due process when it amended its policy manual to preclude exempt employees from accruing comp time. Plaintiff's claim fails for two reasons: (1) she did not allege this claim

---

[9] As mentioned above, Plaintiff claims that she was forced into retirement. She argues that this forced retirement constituted a termination. At times, the Court refers to her retirement as the "termination" of her employment. In doing so, the Court does not make any finding or ruling on whether Plaintiff was actually fired.

[10] On January 25, 2017, the Court informed Plaintiff that it was considering granting summary judgment on these claims for different reasons and provided Plaintiff with an opportunity to respond, which she did. (Docs. 191, 192.)

in her complaint; and (2) Augusta amended its policy manual through legislative action.

First, as noted, Plaintiff did not plead this claim in her complaint. Rather, she asserted it for the first time in her motion for summary judgment. But a plaintiff may not "raise new claims at the summary judgment stage." Gilmor v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004). Thus, this claim fails for this reason alone.

Even if Plaintiff had sufficiently pleaded this claim, however, it would still fail because Augusta changed its policy through a legislative act. Augusta argues, and Plaintiff does not dispute, that Augusta amended its policy manual through the passage of an ordinance. Thus, the issue came before the board of commissioners on two separate occasions, and members of the public were permitted to be heard about the ordinance.

Government often acts in one of two capacities — legislative or adjudicative. When a government body acts through a legislative process, those affected "are not entitled to procedural due process." 75 Acres, LLC v. Miami-Dade Cty., 338 F.3d 1288, 1294 (11th Cir. 2003). Or, viewed differently, "[w]hen the legislature passes a law which affects a general class of persons, those persons have all received procedural due process — the legislative process." Id. (citation omitted) (internal quotation marks omitted). When the government's

23

conduct is adjudicative, however, affected citizens may be entitled to additional process. See id. The Eleventh Circuit has not adopted a bright-line test for distinguishing between legislative and adjudicative actions. See id. at 1296. But the principal difference is that legislative actions affect general classes of individuals, and adjudicative actions tend to affect only those involved in the decision. See id. at 1297-98.

Here, Augusta amended its policy manual through the passage of an ordinance. The board of commissioners, acting in a legislative capacity, passed that ordinance. And the amended policy manual applied to everyone bound to follow the manual. In fact, Plaintiff does not actually dispute that Augusta amended the manual through a legislative act.[11] Accordingly, Plaintiff's claim also fails for this reason.

### 2. Plaintiff's claims that Defendants failed to provide her with adequate notice and proper hearings

Plaintiff also alleges that Defendants violated due process because she did not receive notice of the allegations against her or a proper hearing before her demotion or her alleged termination. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const.

---

[11] Rather, Plaintiff argues that it was Defendants' decision in May 2012 to enforce the policy against her that violated due process. But Plaintiff has not explained — and the Court cannot discern — how Defendants' application of the policy violated due process.

amend. XIV, § 1. To succeed on a procedural due process claim, a plaintiff must show (1) a deprivation of a constitutionally protected property interest, (2) state action, and (3) a constitutionally inadequate process. Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006).

A plaintiff has not been deprived of a constitutionally adequate process "'unless and until the state refuses to provide due process.'" McKinney v. Pate, 20 F.3d 1550, 1562 (11th Cir. 1994) (quoting Zinermon v. Burch 494 U.S. 113, 123 (1990)). In other words, that a plaintiff suffered a procedural deprivation does not mean that the plaintiff suffered a due process violation. See id. at 1563. Thus, when state law provides a remedy for a plaintiff's deprivation, that plaintiff has not suffered a federal due process violation. See id. at 1562-64; Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim.").

Here, Plaintiff complains that Defendants failed to give her proper notice of the allegations against her and that they failed to provide her with an adequate opportunity to dispute the allegations. More specifically, Plaintiff contends that Mr. Shanahan failed to provide her with notice and an opportunity to

respond before he demoted her, that Mr. Russell did not allow her to present witnesses and dispute the allegations against her at her appeal hearing, that Mr. Russell was a biased decisionmaker, and that Defendants terminated her employment without notice and an opportunity to respond.

Plaintiff has alleged that she suffered procedural deprivations. But she has failed to establish that she suffered a procedural due process violation because an adequate state-law remedy existed to cure the deprivation. Under Georgia law, if no other remedy exists and a party has a clear right to have an act performed, the party may seek a writ of mandamus. See O.C.G.A. § 9-6-20; Cotton, 216 F.3d at 1332. And courts have found that a writ of mandamus will work to provide the process due to an employee who is deprived of an adequate hearing before her employment is terminated. See Maddox v. City of Winder, No. 2:05-CV-0190-RWS, 2007 WL 788925, at *3 (N.D. Ga. Mar. 13, 2007); Cook v. City of Jackson, No. 5:05-CV-250 (CAR), 2007 WL 737514, at *6 (M.D. Ga. Mar. 7, 2013). Thus, if Defendants deprived Plaintiff of an adequate opportunity to challenge her demotion (or her termination), and she was clearly entitled to such an opportunity — as she contends she was — then she could have sought a writ a mandamus to compel Defendants to provide her that opportunity.

### 3. Plaintiff's claim that "too much pay was taken"

In her complaint, Plaintiff alleges that Defendants decreased her salary by an amount greater than Augusta's policy allowed. Specifically, Plaintiff alleges that "[i]n an arbitrary and capricious manner too much pay was taken, in violation of City policy . . . ." (Doc. 1 at 26.) According to Plaintiff, after her demotion, her salary was decreased by 50%. And under Augusta's policy, Plaintiff argues, an employee's salary could not be decreased by more than 15%.

It remains unclear to the Court whether Plaintiff contends that Defendants decreased her salary without providing her an adequate chance to object to that action or whether she believes that Defendants were simply not permitted to lower her salary to the level they did. If her claim is based on the former, then the Court's analysis above applies, and she could have sought a writ of mandamus to compel Defendants to provide her with an opportunity to object to her salary decrease. If her argument is the latter, however, she is essentially seeking to assert a substantive due process claim.

Substantive due process prevents "certain government actions regardless of the fairness of the procedures used to implement them." McKinney, 20 F.3d at 1556 (citation omitted) (internal quotation marks omitted). Substantive due process, however, protects only "those rights that are

fundamental . . . ." Id. (citation omitted) (internal quotation marks omitted). "[A]reas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution." Id. (citation omitted) (internal quotation marks omitted). And "[b]ecause employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection." Id. at 1560. Thus, Plaintiff's claim that "too much pay was taken" fails.

In sum, Plaintiff's procedural due process claim based on the alleged deprivation of her right to accrue comp time fails because she did not plead it in her complaint and because any deprivation occurred as a result of a legislative act; her claims based on Defendants' alleged failure to provide her with sufficient opportunities to be heard in opposition to her demotion and termination fail because adequate state-law remedies were available; and her claim based on her loss of salary fails because her right to her salary, to the extent she had one, was not a fundamental right. Accordingly, the Court **GRANTS** Defendants' motions for summary judgment on these issues and **DENIES** Plaintiff's motion for summary judgment.

## C. Disability Discrimination

In her complaint, Plaintiff alleges that Augusta discriminated against her in violation of the Americans with Disabilities Act ("ADA") when it demoted her in May 2012 and when it terminated her employment in February 2013. Augusta and Plaintiff both move for summary judgment on Plaintiff's ADA claims.

### 1. Plaintiff's claim based on her demotion

Although Plaintiff alleges in her complaint that Augusta discriminated against her based on a disability when it demoted her, she has effectively abandoned that claim. And for good reason: she did not timely file an EEOC charge alleging this act of discrimination.

Under the ADA, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the date of the discriminatory act. See 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a) (incorporating the procedures set forth in 42 U.S.C. § 2000e-5 into the ADA). Plaintiff's first EEOC charge does not reference her disability or any allegation of disability discrimination. In her second charge, she states that "[she is] a person with a disability" and that she was terminated because she could not perform her job duties. (Doc. 28-10.) But she did not file her second charge until April 4, 2013, which is

almost a year after Plaintiff's demotion.[12]   Thus, Plaintiff failed to exhaust her administrative remedies for this claim.

## 2. **Plaintiff's claims based on her termination**

Plaintiff also asserts that Augusta discriminated against her based on her disability when it forced her to retire.   She contends that Augusta failed to accommodate her by not allowing her to transfer to a different position and by not granting her additional leave.[13]

Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   42 U.S.C. § 12112(a); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001).   To succeed on a claim under the ADA, a plaintiff must show that: "(1) she is disabled, (2) she was a 'qualified individual' when she was terminated, and (3) she was discriminated against on account of her disability."   Frazier-White v. Gee, 818 F.3d 1249, 1255 (11th Cir. 2016).   A qualified

---

[12]   It also fails to mention her demotion.

[13]   Plaintiff also contends that Augusta violated the ADA because it failed to engage in an interactive process.   See 29 C.F.R. § 1630.2(o)(3). But the law in the Eleventh Circuit is clear that "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant."   Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997).   Accordingly, to the extent Plaintiff seeks to hold Augusta liable for failing to engage in an interactive process, her claim fails.

individual is someone who can perform the essential functions of the job with or without reasonable accommodation. See Lucas, 257 F.3d at 1255.

A common form of discrimination under the ADA arises when an employer fails to reasonably accommodate a disabled employee. See id. "An accommodation can qualify as reasonable, and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job." Id. (internal quotation marks omitted). And the ADA lists the following as examples of reasonable accommodations: "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position . . . ." 42 U.S.C. § 12111(9)(B).

### a. Plaintiff failed to request a transfer to a new position.

Plaintiff's argument that Augusta should have transferred her to a new position fails because she did not request reassignment. An ADA plaintiff has the burden of identifying an accommodation and showing that the accommodation is reasonable. Frazier-White, 818 F.3d at 1255; Lucas, 257 F.3d at 1255-56. Indeed, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made . . . ." Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999).

Plaintiff contends that Augusta failed to reasonably accommodate her because it did not allow her to transfer to a different position. In her brief in support of her motion for summary judgment, Plaintiff lists eleven jobs "she believes she was, and is, qualified" to perform. (Doc. 150 at 9-10.) Plaintiff, however, has not offered any evidence that she specifically requested transfer to any of these positions. In fact, Plaintiff admits in several affidavits that "[t]here were several jobs that [she] learned of _in April 2016_" that were available in 2012 and 2013. (Doc. 146-1 at 1, 5, 9, 13, 17, 21, 25, 29, 33, 37, 41 (emphasis added).) That these positions may have been available around the time Plaintiff retired is insufficient. She must show that she requested reassignment to a specific position, which she could not have done if she did not know about the jobs until 2016. See _Frazier-White_, 818 F.3d at 1256-57 (finding that a plaintiff's claim based on her employer's failure to reassign her could not prevail because she "did not ever request reassignment to a specific position or provide any information that would have enabled Defendant to determine whether she could perform the essential duties of a vacant position given her physical limitations"). Moreover, Plaintiff has not produced any evidence — other than her own belief — that shows that she was qualified for these positions. See _id._ (finding insufficient a plaintiff's "conclusory

32

statement that there were jobs she 'believe[s] she could have performed' with additional, unspecified accommodations" (alteration in original)).

### b. Plaintiff has failed to show that her request for additional leave would have been reasonable.

Plaintiff's argument that Augusta discriminated against her when it did not extend her leave fails because she has not shown that additional leave would have allowed her to perform the essential functions of her job. As noted, it is a plaintiff's burden under the ADA to identify a specific accommodation and to show that it is reasonable. See Frazier-White, 818 F.3d at 1255. Thus, it is a plaintiff's burden to show that a proposed accommodation would allow the plaintiff to perform the essential functions of the job. See id. And although a leave of absence may be a reasonable accommodation, an indefinite leave of absence is not because "[t]he ADA covers people who can perform the essential functions of their jobs presently or in the immediate future." Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003).

There is evidence that Plaintiff requested leave in December 2012 until her next doctor's appointment in March 2013. (See Doc. 47-1.) But there is no evidence Plaintiff would have been capable of returning to work following her March 2013 doctor's appointment. Indeed, she testified that as of August

33

2013, her doctor had still not cleared her to perform physical tasks. (Pl. Dep. at 228-29.) If she could not perform physical tasks in August 2013, then she would not have been capable of returning to work in March 2013. Thus, this accommodation would not have allowed Plaintiff to perform the essential functions of the job. Rather, Plaintiff's request was for an indefinite leave of absence, which is unreasonable as a matter of law. See Wood, 323 F.3d at 1314.

Because Plaintiff did not request reassignment to a position for which she was qualified, and because her request for additional leave would not have allowed her to perform the essential functions of the job, Plaintiff's motion for summary judgment on this issue is **DENIED**, and Augusta's motion for summary judgment is **GRANTED**.

## D. Hostile Work Environment

Plaintiff also asserts a hostile-work-environment claim. To prevail on a hostile-work-environment claim, a plaintiff must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

34

<u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2002). To be considered sufficiently severe, the "behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive." <u>Id.</u> at 1276 (alterations in original) (citation omitted) (internal quotation marks omitted). On the issue of severity, courts evaluate: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." <u>Id.</u>

In essence, Plaintiff argues that her African-American coworkers would not follow her instructions and that some of her superiors would not follow her disciplinary recommendations.[14] She also claims that one of her coworkers stated that she "did not want to work for a white woman" and referred to Plaintiff as living in a "f[*****] white neighborhood." (Doc. 163 at 12-13.)

---

[14] In one of her briefs opposing summary judgment, Plaintiff references that she believes that Mr. Shanahan initiated his investigation as an attempt to "Portray Plaintiff As Creating A Hostile Work Environment, Including Racist." (Doc. 163 at 13.) It is unclear to the Court whether Plaintiff intends for this argument to support her hostile-work-environment claim. To the extent she does, the Court is unpersuaded.

The Court fails to see, however, how Plaintiff's allegations of insubordination could be considered a hostile work environment. And the alleged comments by Plaintiff's coworker were "mere utterance[s]." Miller, 277 F.3d at 1277. Plaintiff has not offered any evidence that shows that the alleged conduct was routine, physically threatening, or otherwise severe enough to establish that her workplace was "permeated with discriminatory intimidation, ridicule and insult . . . ." Id. Accordingly, the Court **GRANTS** Augusta's motion on this issue.

### E. FLSA Retaliation

Plaintiff alleges that Augusta retaliated against her in violation of the FLSA. She claims that Augusta demoted her in retaliation for questioning whether she should have been classified as exempt under the FLSA. Plaintiff relies on three complaints that she made about her FLSA classification. First, Plaintiff points to a complaint that she made about her job duties in 1999. Second, she points to a 2005 grievance that she filed about her compensation. And third, Plaintiff contends that she raised an issue about her compensation during a March 2012 meeting with Mr. Shanahan.

Under the FLSA, employers are prohibited from retaliating against employees who assert their rights under the statute. See 29 U.S.C. § 215(a)(3). In a retaliation claim based on

36

circumstantial evidence, courts apply the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting framework. See Henderson v. City of Grantville, 37 F. Supp. 3d 1278, 1282 (N.D. Ga. 2014).

Thus, an employee must first establish a prima facie case by showing that: "(1) [the employee] engaged in activity protected under [the] act; (2) [the employee] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." Wolf v. Coca-Cola Co., 200 F.3d 1337, 1343-44 (11th Cir. 2000) (second alteration in original) (citation omitted) (internal quotation marks omitted). If the employee successfully establishes a prima facie case, the burden shifts to the employer to proffer legitimate, nonretaliatory reasons for its actions. Id. at 1343. If the employer does so, the employee must then show pretext. Id.

### 1. Plaintiff's prima facie case

Plaintiff's first two complaints fail because she has not presented any evidence showing a causal connection between those complaints and her demotion.[15] In retaliation cases, a plaintiff can establish causation "by showing close temporal proximity between the statutorily protected activity and the adverse

---

[15] The Court also questions whether Plaintiff's 2012 meeting with Mr. Shanahan constitutes protected activity under the FLSA. But because Plaintiff's claim fails for other reasons, the Court will not address that issue.

employment action." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam). Without more, however, temporal proximity must be "very close." Id. "Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." Id.

Here, Plaintiff alleges that she was demoted because of complaints she made twelve and six years before her demotion. This significant temporal disparity between her complaints and her demotion are too remote, without more, to show a causal connection. In fact, Plaintiff has admitted that her 1999 complaint is too remote but insists that "there are connecting events showing that a cause of Plaintiff's demotion was Plaintiff's protected activity stemming from the 1999 complaint [because] Plaintiff continued complaining about being worked out of her job description and the amount of physical labor demanded of her from 1999 through 2005." (Doc. 126 at 9-10.) Even so, a six-year span between her complaint and her demotion, without more, is too remote.

### 2. Augusta's legitimate reasons and pretext

Plaintiff's retaliation claims, including her claim based on her 2012 meeting with Mr. Shanahan, fail because she has not rebutted Augusta's legitimate, nonretaliatory reason for

demoting her — that she improperly accrued and used comp time. On this issue, Plaintiff essentially reasserts her arguments about pretext under her equal protection and Title VII claims: she contends that there is evidence that Mr. Shanahan and Mr. Russell should have known that Plaintiff did not intentionally violate any rule. But, as with her equal protection and Title VII claims, that is insufficient show pretext.

Because Plaintiff has failed to establish a prima facie case of retaliation with respect to her 1999 and 2005 complaints, and because she has failed to show pretext with respect to any of her complaints, Plaintiff has failed to show that Augusta retaliated against her in violation of the FLSA. Thus, the Court **GRANTS** Augusta's motion for summary judgment on this issue.

### F. Claims Against Sam Smith

Plaintiff also named Mr. Smith as a Defendant in her complaint. Plaintiff basically alleges that Mr. Smith and his girlfriend caused the investigation into Plaintiff's comp-time practices. More specifically, she contends that Mr. Smith and his girlfriend complained about Plaintiff's use of comp time after she had been on catastrophic leave. They did this, Plaintiff argues, because they wanted Mr. Smith to fill Plaintiff's position. Indeed, Plaintiff contends that "Sam Smith was part of a conspiracy to demote Plaintiff, so that he

would get her job and would not have to deal with her attempts to discipline him and make him follow city policy . . . ." (Doc. 125 at 4.) And Plaintiff believes that Mr. Shanahan was part of this conspiracy because he and Mr. Smith were allegedly friends.

A § 1983 conspiracy claim requires a plaintiff to prove three elements: "(1) a violation of [her] federal rights; (2) an agreement among the Defendants to violate such a right; and (3) an actionable wrong." Gibbons v. McBride, 124 F. Supp. 3d 1342, 1379 (S.D. Ga. 2015) (citation omitted) (internal quotation marks omitted).

Here, Plaintiff's claim against Mr. Smith fails because, as explained above, she has not produced sufficient evidence to show that she was denied a constitutional right. Mr. Smith could not have engaged in a conspiracy to violate Plaintiff's constitutional rights if those rights were never violated. Accordingly, Plaintiff's claim against Mr. Smith fails, and the Court **GRANTS** his motion for summary judgment.

## G. Title VII Retaliation

Finally, Plaintiff alleges that Augusta terminated her employment (by forcing her to retire) in retaliation for filing her 2012 EEOC charge. Under Title VII, it is unlawful to retaliate against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e—3(a). Similar to a

40

retaliation claim under the FLSA, courts utilize the McDonnel Douglas analysis in Title VII retaliation cases, and a plaintiff must first establish a prima facie case by showing: "(1) that [the plaintiff] engaged in statutorily protected expression; (2) that [the plaintiff] suffered an adverse employment action; and (3) that there is some causal relation between the two events." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam) (citation omitted) (internal quotation marks omitted). The employer may then provide a legitimate, nonretaliatory reason for its actions. Brown v. Ala. Dep't. of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010). If the employer does so, then the plaintiff must rebut that reason and show pretext. Id.

Here, Augusta argues only that Plaintiff has failed to establish a prima facie case.[16] First, it contends that Plaintiff's claim fails because she did not suffer an adverse employment action. And second, Augusta argues that there is no casual connection between the filing of Plaintiff's EEOC charge and the end of her employment with Augusta. It is not disputed that Plaintiff's filing of an EEOC charge constitutes protected activity. See 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified,

---

[16] It does not argue, for example, that Plaintiff cannot rebut a legitimate, nonretaliatory reason for its actions.

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").

### 1. **Plaintiff's adverse employment action**

Augusta argues that Plaintiff did not suffer an adverse employment action because she retired. As already mentioned, however, Plaintiff disputes whether her retirement was voluntary.

To satisfy the adverse-employment-action prong, a plaintiff must show that the challenged action was "materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). But showing material adversity requires a plaintiff to show only that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (citation omitted) (internal quotation marks omitted).

Augusta contends that Plaintiff "voluntarily retired when she was unable to return to work." (Doc. 141-1 at 18-19.) But Plaintiff disagrees and argues that Augusta separated her without her knowledge or consent. And Augusta has not cited any authority supporting its position. Thus, without more, the Court is unpersuaded that Plaintiff has failed to present evidence that she suffered an adverse employment action.

## 2. Causation

Augusta also argues that Plaintiff has failed to establish a causal connection between the end of her employment and her filing of an EEOC charge. As previously mentioned, causation in a retaliation case may be met by showing close temporal proximity. Cooper Lighting, Inc., 506 F.3d at 1364. A gap of only a few months may be sufficiently proximate to satisfy the causation prong of a prima facie case. See Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (finding the causation prong satisfied when seven weeks had passed between the filing of an EEOC charge and a plaintiff's termination).

Here, again without citing any authority on the issue, Augusta argues that Plaintiff cannot establish a causal connection. This is so, Augusta contends, because Mr. Shanahan stated in an affidavit that he did not make any "inquiries" into Plaintiff's employment status based on her filing of the charge.[17] (Doc. 141-3 ¶ 10.) But this self-serving statement alone is insufficient to warrant summary judgment. Without more, the Court is unable to say that Plaintiff has failed to create a triable issue on causation for purposes of a prima facie case of retaliation.

---

[17] Mr. Shanahan is referring to a December 2012 e-mail in which he inquired about how long he would have to wait before filling Plaintiff's position with someone else. (Doc. 41-7.)

Because, based on the arguments asserted by Augusta, there is sufficient evidence that Plaintiff's Title VII retaliation claim should survive summary judgment, Augusta's motion for summary judgment on this issue is **DENIED**.

### V. Conclusion

In sum, Plaintiff's motions for summary judgment (docs. 54, 138) are **DENIED**. Fred Russell's, Bill Shanahan's, and Sam Smith's motions for summary judgment (docs. 56, 57, 58) are **GRANTED**. Augusta, Georgia's first motion for summary judgment (doc. 55) is **GRANTED**, and Augusta Georgia's second motion for summary judgment (doc. 141) is **GRANTED IN PART AND DENIED IN PART**. Only Plaintiff's Title VII retaliation claim will proceed. The Clerk is instructed to **TERMINATE** Fred Russell, Bill Shanahan, and Sam Smith as Defendants in this case. The Clerk shall also **TERMINATE** the following motions, which are now moot: Plaintiff's motion to extend (doc. 131); and Plaintiff's motion to supplement (doc. 185). Moreover, the Clerk is instructed to **CLOSE case number CV 115-123**.

**ORDER ENTERED** at Augusta, Georgia this _____ day of March, 2017.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA